Alan A. Meda (#009213)
BURCH & CRACCHIOLO, P.A.
1850 N. Central Ave., Suite 1700
Phoenix, AZ 85004
Tel: 602.274.7611
ameda@bcattorneys.com

*Proposed Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>NEDDY, LLC, DBA FORTRESS ASPHALT,<br><br>Debtor. | Chapter 11 Subchapter V<br><br>Case No. 2:25-bk-01459-BKM<br><br>**EMERGENCY MOTION FOR INTERIM AND FINAL ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL** |

Neddy, LLC dba Fortress Asphalt, Debtor and Debtor-in-Possession ("**Debtor**"), hereby requests entry of interim and final orders authorizing Debtor to use cash collateral, pursuant to the budget (the "**Budget**") set forth in Exhibit 1 attached hereto. Debtor believes one or more hard money lenders may claim to have a first lien position on the cash collateral. This Motion is brought on an emergency basis seeking an accelerated hearing, pursuant to Local Bankruptcy Rule 9013-1(i), in order to avoid immediate and irreparable harm to Debtor's estate.

> The relief requested in this Motion would authorize the Debtor to use cash collateral to pay the operating expenses in the ordinary course and to grant the first priority existing lender a replacement lien to the extent of its interest in the cash collateral as of the Petition Date.

An Interim Order is necessary to prevent immediate and irreparable harm to Debtor due to the immediate and serious cash needs of Debtor prior to a date on which a Final Hearing can be held on these matters. Debtor requires an immediate order of this Court authorizing it to use cash collateral to pay all of Debtor's normal and ordinary

operating expenses (such as payroll including compensation to personnel, utilities, vehicle payments, and materials, goods and supplies) as will come due in the ordinary course of Debtor's business in order to preserve the going concern value of its business, assets and reorganization efforts.

The Motion is supported by the following Memorandum of Points and Authorities, the *Declaration of Michael Blake Linthicum in Support of Debtor's First Day Motions* (the "**First Day Declaration**"), the Budget attached hereto as <u>Exhibit 1</u>, and the entire record before the Court in this Bankruptcy Case, all of which is incorporated herein by this reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND AND JURISDICTION

1. On February 22, 2025 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11, subchapter V of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States bankruptcy Court for the District of Arizona. The Debtor continues to operate its business and manage its assets as a debtors-in-possession in accordance with §§ 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this case other than the appointment of a Subchapter V Trustee.

2. The Court has jurisdiction over this bankruptcy case under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

3. The statutory predicates for the relief requested are 11 U.S.C. §§ 105(a) and 363, and Local Bankruptcy Rule 4001-2.

### II. FACTUAL BACKGROUND.

4. Debtor is an Arizona limited liability company formed on or about August 4, 2022, under the laws of the State of Arizona. Its sole manager is Michael Blake Linthicum. Michael Blake Linthicum has a 85% membership interest in the Debtor and

1 Nancy Linthicum, the aunt of Michael Blake Linthicum, owns the remaining 15% membership interest.

5. Debtor is engaged in the business of asphalt paving, painting, sealing and repair including seal coating, crack and mastic sealing, and pavement maintenance. Debtor includes a number of cities and towns among its customers including Phoenix, Peoria, Surprise, Carefree, Litchfield Park, Glendale, Avondale, Goodyear, El Mirage, Buckeye, and Sun City. Debtor currently operates out of leased premises located at 9299 W. Olive Ave., Ste 306, Peoria, AZ 85345.

6. Additional factual background regarding the Debtor, including its current and historical business operations and the events precipitating its chapter 11 filing is set forth in detail in the First Day Declaration filed contemporaneously with this Motion and incorporated herein by this reference.

7. Debtor believes and asserts that all of Debtor's cash collateral is secured by a security interest in favor of The Huntington Bank ("**Huntington**") pursuant to UCC-1's filed with the Arizona Secretary of State on August 16, 2023, as Instrument No. 2023-004-0880-9 and on August 16, 2023, as Instrument No. 2023-004-0986-3. Huntington is owed approximately $493,910 as of the Petition Date.[1]

8. Financial Pacific Leasing has a security interest in certain leased equipment pursuant to a UCC filed with the Arizona Secretary of State on May 14, 2024, as Instrument No. 2024-002-1876-4. This is unaffected by the request to use cash collateral.

9. Other parties may claim an interest in Debtor's cash collateral including the following:

    a.    Good Funding, LLC
          PO Box 252
          Midvale, UT 84047

          2100 W. Orangewood Ave.
          Suite 205
          Orange, CA

---

[1] Huntington is owed an additional $49,500 on a line of credit loan.

| | |
|---|---|
| 1 | Phone: 888.914.3576 |
| | E-mail: info@goodfunding.com |
| 2 | |

There is no UCC on file for Good Funding, LLC.

   b. Headway Capital
    175 W. Jackson Blvd.
    Suite 1000
    Chicago, IL 60604
    Phone: 866.698.8494
    E-mail: support@headwaycapital.com

There is no UCC on file for Good Funding, LLC.

   c. Unspecified Lender
    UCC-1 filed with the Arizona Secretary of State on 12.31.24
    Instrument No. 2024-005-4129-7
    Corporate Service Company as Representative
    PO Box 2576
    Springfield, Illinois 62708
    E-mail: uccsprep@cscinfo.com

  10. Debtor believes and asserts that Huntington has a valid first priority security interest in the cash collateral and that all other parties are under secured and junior to the Huntington.

### III. RELIEF REQUESTED

**A. Debtor Should be Authorized to Use Cash Collateral to Operate, Maintain and Preserve its Business.**

  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with § 363 of the Code See 11 U.S.C. § 1107(a). A debtor in possession may use cash collateral, pursuant to 11 U.S.C. § 363(c) & (e), if all persons holding an interest in that cash collateral either consent to such use or are "adequately protected."

  Section 363 of the Code defines cash collateral to include cash, bank accounts, and proceeds from accounts receivables subject to a security interest. In the present case, the Debtor possesses cash collateral from receipts generated from its operations and needs to use it to pay operating and bankruptcy administrative expenses as set forth in the detailed

Budget, Exhibit 1. The Debtor has no unencumbered funds with which to pay such expenses and if such expenses are not paid, the Debtor will be unable to continue its business operations.

Section 363(c)(2) provides that a debtor in possession may use "cash collateral" under section (c)(1) if:

    (A)    Each entity that has an interest in such cash collateral consents; or

    (B)    The Court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2)(A) and (B). Case law is clear that a Chapter 11 debtor may use cash collateral for the purpose of maintaining and operating its property. *See*, e.g. *In re Tucson Industrial Partners*, 129 B.R. 614 (9th Cir. BAP 1991). Here the Debtor is an operating business entity whose going concern value must be maintained in order for the company to preserve and maximize its value for all creditors and parties in interest.

    **B.**    **SBA is Adequately Protected, and Therefore, the Court Should Authorize Use of Cash Collateral.**

Pursuant to Section 363(c)(2), the Court may authorize the debtors to use a secured creditor's cash collateral if the secured creditor is adequately protected. *See In re Mellor,* 734 F.2d 1396 (9th Cir. 1984). Courts have found that a secured creditor is adequately protected where the value of its collateral is not declining over time or there is a sufficient equity cushion. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.,* 484 U.S. 365, 370, 108 S.Ct. 626 (1988); *In re Phoenix Steel Corp.,* 39 B.R. 218, 224 (D. Del. 1984) (finding that a creditor's security is not impaired where a significant equity cushion exists); *In re Dynaco Corp.,* 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (finding that a secured creditor was adequately protected where the level of its collateral was not declining). Courts have further found equity cushions of ten percent (10%) to be sufficient adequate protection. *See In re Mellor,* 734 F.2d 1396, 1401 (9th Cir. 1984), citing *In re McGowan,* 6 B.R. 241, 243 (Bankr. E.D.Pa.1980) (holding a 10% cushion is sufficient to be adequate protection).

Pursuant to 11 U.S.C. § 361, adequate protection may also be provided by a replacement lien. *In re Center Wholesale, Inc., 159* F.2d 1440, 1450 (9th Cir. 1985); *In re Swede/and Dev. Group, Inc.,* 16 F.3d 552,564 (3d Cir. 1994); *In re Beeker Industries Corp,,* 58 B.R. 725 (Bankr. S.D.N.Y. 1986).

Section 363(p) provides, "[i]n any hearing under this section - (1) the trustee has the burden of proof on the issue of adequate protection; and (2) the entity asserting an interest in property has the burden of proof on the issue of validity, priority, or extent of such interest." 11 U.S.C. § 363(p). Furthermore, under 11 U.S.C. § 506(a), a creditor generally bears the burden of proving the amount, secured status and extent of its lien. *In re Sneijder,* 407 B.R. 46, *55* (Bankr. S.D.N.Y. 2009); *see also In re Richard Buick, Inc.,* 126 B.R. 840, 851 (Bankr. E.D. Pa. 1991) ("Throughout the Code, the burden of proving the 'validity, priority, and extent' of security interests lies upon the creditors asserting such interests."). Although the Third Circuit applied a burden-shifting framework in *In re Heritage Highgate, Inc.,* it held that the creditor bears "the ultimate burden of persuasion ... to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim." *In re Heritage Highgate Inc.,* 679 F.3d 132, 139 - 140 (3d Cir. 2012) (quoting *In re Robertson,* 135 B.R. 350, 352 (Bankr. E.D. Ark. 1992)).

In this case, Huntington will be provided with adequate protection by granting it a replacement lien on all receivables and receipts generated post-petition, to the same nature, extent and priority of its pre-petition lien. The granting of replacement liens on new accounts generated by the Debtor's use of cash collateral is a common method of providing adequate protection. *In re Wrecclesham Grange, Inc.,* 221 B.R. 978, 981 (Bankr. N.D. Florida 1997); *In re Barkley AAA Investors, Ltd.* 175 B.R. 755 (Bankr. D. Kansas 1994). By granting the Huntington replacement liens, the Debtor will provide adequate protection of the Huntington's claimed security interest in accordance with the requirements of the Bankruptcy Code.

/ / /

Any funds allegedly constituting cash collateral will be used by Debtor only pursuant to the Budget set forth in <u>Exhibit 1</u> attached hereto. The Budget may be amended from time to time with the consent of Huntington or approval of the Court, after notice and hearing. Without amending the Budget, Debtor may pay expenses that exceed the amounts in the Budget if, for the period beginning on the Petition Date and ending on the date of the payment, Debtor's total payments for expenses in that period do not exceed by more than ten percent (10%) the total amount of payments for expenses contemplated under the entire Budget for that period.

WHEREFORE, the Debtor respectfully request that this Court enter an Interim Order and a Final Order, as follows:

1. Granting this Motion for Interim and Final Order Authorizing the Use of Cash Collateral;

2. Authorizing the Debtor use of cash collateral upon the terms and conditions described herein retroactive to the Petition Date in order to avoid immediate and irreparable harm to Debtor pending a Final Hearing on this Motion; and

3. Authorizing the granting of replacement of liens retroactive to the Petition Date against all accounts receivables and receipts, and any and all proceeds created by the operation of Debtor's business.

4. Granting such further relief as is just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 22nd day of February 2025.

**BURCH & CRACCHIOLO, P.A.**

By <u>/s/ Alan A. Meda (#009213)</u>
Alan A. Meda
*Proposed Attorneys for Debtor*

# Exhibit 1

| Date | Feb-25 | Mar-25 | Apr-25 | May-25 |
|---|---|---|---|---|
| **Fixed Expenses** | | | | |
| Salaries | -$4,028 | -$16,113 | -$16,113 | -$16,113 |
| Huntington 7A | $0 | -$7,500 | -$7,500 | -$7,500 |
| Huntington LOC | $0 | | | |
| Ford Leases | $0 | -$5,982 | -$5,982 | -$5,982 |
| Business Owners (Liability) (CNA) | $0 | -$325 | -$325 | -$325 |
| Commercial Umbrella (CAN) | $0 | -$202 | -$202 | -$202 |
| Commercial Auto (Travelers) | $0 | -$1,286 | -$1,286 | -$1,286 |
| Current Building Lease | $0 | | | |
| New Yard Lease | $0 | $0 | -$1,800 | -$1,800 |
| Sales Expense | $0 | -$800 | -$800 | -$800 |
| Forklift Lease (Pacific Finance) | $0 | | | |
| Phone (Verizon) | $0 | $0 | $0 | $0 |
| Life Insurance | $0 | $0 | $0 | $0 |
| Marketing | $0 | -$2,500 | -$2,500 | -$2,500 |
| Google Workspace | $0 | -$150 | -$150 | -$150 |
| QuickBooks Payroll | $0 | -$184 | -$184 | -$184 |
| Cintas (Uniforms) | $0 | -$740 | -$740 | -$740 |
| | | | | |
| EverLine | | | | |
| Goodfunding | | | | |
| Headway Capital | | | | |
| | | | | |
| Sum Fixed Expenses | -$4,028 | -$35,782 | -$37,582 | -$37,582 |
| | | | | |
| **Variable Expenses** | | | | |
| Fuel (Christensen) | $0 | $0 | $0 | $0 |
| Hourly Labor | -$7,500 | -$23,747 | -$11,873 | $0 |
| Perishables | $0 | -$1,400 | -$700 | $0 |
| Materials | $0 | -$4,500 | -$3,750 | -$12,500 |
| DitchWitch (Pape) | $0 | -$3,800 | -$1,900 | $0 |
| Car Wash (SSWC) | $0 | -$100 | -$100 | -$100 |
| Bank of America Credit Card | $0 | | | |
| UNREALIZED EXPENSES | | | | |
| | | | | |
| CapEx | | | | |
| Debt Payout Schedule | | | | |
| Sum Variable Expenses | -$7,500 | -$33,547 | -$18,323 | -$12,600 |

| | Feb-25 | Mar-25 | Apr-25 | May-25 |
|---|---|---|---|---|
| Bankruptcy Professionals | | $0 | $0 | $0 |
| L&B CPAS | $0 | -$400 | -$400 | -$400 |
| Sales Consultant | | $0 | $0 | $0 |

| | | | | |
|---|---|---|---|---|
| Federal Procurement | $0 | -$1,500 | -$1,500 | -$1,500 |
| Professional Employee(s) | $0 | -$1,900 | -$1,900 | -$1,900 |
| | Feb-25 | Mar-25 | Apr-25 | May-25 |
| Total Expenses | -$11,528 | -$71,228 | -$57,805 | -$52,082 |