Joseph E. Cotterman (Bar No. 013800)
5232 West Oraibi Drive
Glendale, Arizona 85308
Telephone: (480) 353-0540
Cottermail@cox.net
*SubChapter V Trustee*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>Neddy, LLC, DBA FORTRESS ASPHALT,<br><br>Debtor. | In Proceedings under Chapter 11 Subchapter V<br><br>Case No. 2:25-bk-01459-BKM<br><br>**SUBCHAPTER V TRUSTEE'S RECOMMENDATION REGARDING DEBTOR'S PLAN OF REORGANIZATION DATED MAY 22, 2025**<br><br>Hearing Date: August 7, 2025<br>Hearing Time: 2:00 p.m.<br>Hearing Location: 230 N. 1st Avenue Phoenix, AZ, Courtroom 701 |

In connection with the Order entered June 13, 2025 at ECF docket number 86 (the "Confirmation Procedures Order") and confirmation of the Plan of Reorganization dated May 22, 2025 filed at ECF docket number 78 (the "Plan") by Debtor Neddy LLC, dba Fortress Asphalt ("Neddy") , I, Joseph Cotterman, the Subchapter V trustee appointed in this case, make the following recommendation regarding confirmation of the Plan:

**Summary Recommendation:** After a review of the Plan and available information relevant to its confirmation, discussions with Neddy's counsel, and communication with various creditors, I would conditionally recommend that, subject to

1

Case 2:25-bk-01459-BKM    Doc 120    Filed 08/04/25    Entered 08/04/25 15:53:32    Desc
Main Document    Page 1 of 7

the Court's determination regarding any remaining unresolved issues discussed below, that the Court confirm the Plan pursuant to 11 U.S.C. §1191(a)[1].

Initially, the content of the Plan includes those items required by §1190, including a brief history of Neddy's business operations as they relate to this case; a narrative and graphic liquidation analysis; and projections regarding Neddy's ability to make plan payments. As discussed in more detail below, subject to resolution of questions regarding feasibility under §1129(a)(11), and the issues raised in the confirmation objections filed in this case, I believe the Plan meets the requirements to be confirmed on a consensual basis pursuant to §1191(a)[2], which incorporates the confirmation requirements of §1129(a). Specifically, as to those confirmation requirements:

➢ Section 1129(a)(1) — Subject to resolution of the Plan Objections defined and discussed below, It appears that the Plan complies with applicable provisions of the Bankruptcy Code. As noted above, the content of the Plan includes the information and terms required by §1190. Under the Plan, all claims are adequately classified, and no provision of the Plan provides for relief or claim treatment beyond what is permissible under the Bankruptcy Code.

➢ §1129(a)(2) — It appears that Neddy has complied with the Bankruptcy Code's requirements, including: soliciting votes on the Plan in a manner consistent with the Confirmation Procedures Order and F.R.Bankr. P. 3017(d) (ECF docket number 87); complying with all other orders of the Court; and conducting its financial affairs within the confines established by the Bankruptcy Code and orders of the Court. In that regard, I would note that Neddy has filed monthly operating reports for each month between the petition date and June, 2025 (ECF docket numbers 73, 77, 89, 90, 93, and 100).[3]

---

[1] Statutes in Title 11 of the United States Code are hereinafter cited by statute number only.
[2] As discussed below, I believe the Plan meets the confirmation requirements of §1129(a)(8) and (10). Only a failure to meet those requirements relegates a Subchapter V plan to confirmation under §1191(b), therefor I have not discussed the requirements of §1191(b) herein.
[3] Docket number 89 is an amended report covering the same period as that covered by docket number 77, and docket number 90 appears to be a duplicate filing of docket number 89.

➢ §1129(a)(3) —The Plan appears to have been proposed in good faith and not by any means forbidden by law. The Plan provides for distributions to creditors from Neddy's future disposable income.  The Plan treats similarly-situated creditors equally except to the extent that they may agree to less favorable treatment.  The Plan does not place the burden of the reorganization disproportionately on one class of creditors or another except to the extent that the Bankruptcy Code's priorities dictate different treatment among certain classes of creditors.

➢ §1129(a)(4) — It appears that all payments to be made under the Plan for services or costs and expenses in connection with this case have either been approved by the Court or are subject to the Court's approval as reasonable prior to any such payment.

➢ §1129(a)(5) – The Plan discloses the identity and affiliations of Neddy's post-confirmation management and control (Plan, §7.03, p.17).  I believe the continuance of Neddy's management for the duration of its Plan is consistent with the interests of creditors, equity security holders, and public policy.

➢ §1129(a)(6) — This subparagraph relates to business entities with regulated rates, and I believe it does not apply in this case.

➢ §1129(a)(7) — Based on the terms of the Plan, a review of Neddy's schedules, liquidation analysis, and the Ballot Report filed at ECF docket number 119, with respect to each impaired class of claims it appears that each claimholder has either accepted the Plan, or will receive at least as much under the Plan as such claimholder would receive if Neddy's nonexempt assets were liquidated under Chapter 7.  The graphic liquidation analysis appended to the Plan as Exhibit A reflects that allowed unsecured creditors are projected to receive a 100% distribution on their claims under the Plan, and would receive no distribution at all in a Chapter 7 liquidation.  Based on the foregoing, I believe the Plan satisfies the requirements of §1129(a)(7)[4] and §1190(1)(b).

---

[4] No class made the election under §1111(b)(2), so §1129(a)(7)(B) does not apply in this case.

➢ 1129(a)(8) — The Ballot Report reflects that all classes voted to accept the Plan with the exception of two classes that did not cast any ballot on the Plan: Class 2C, consisting of the secured claim of Pacific Finance; and, Class 2D, consisting of the secured claim of North Mill Equipment Finance.

Pursuant to the terms of the Plan, Class 2C is nonvoting, and in fact an empty class based on the surrender of Pacific's collateral and its right to vote as a Class 3 unsecured creditor.[5] In fact, Pacific cast a ballot as a Class 3 unsecured creditor, accepting the Plan. Based on the foregoing, I believe the Court should disregard Class 2C for purposes of §1129(a)(8).

I have spoken to counsel for both Neddy and North Mill regarding its Class 2D claim, its confirmation objection discussed below, and North Mill's treatment under the Plan. The parties are negotiating a resolution of the issues raised in North Mill's confirmation objection, and my understanding is that those parties will either reach an agreement on payment terms, or an agreement for Neddy to surrender North Mill's collateral. Based on my discussions with counsel for both parties, in either scenario I believe that by the time of the confirmation hearing the parties will have reached a resolution that includes North Mill supporting confirmation and tendering an accepting ballot to Neddy. In the event that happens, I believe the requirement of §1129(a)(8) will be satisfied.

➢ §1129(a)(9) — At page 11, §3.02, the Plan provides that each holder of an Allowed Administrative Claim will be paid in full on the Effective Date or as Neddy and such administrative expense claimant may otherwise agree, consistent with §1129(a)(9)(a). At §3.03, the Plan provides for deferred cash payments to Class 1 priority tax claims consistent with the 60-month requirement of §1129(a)(9)(c) (even

---

[5] Class 1 is likewise an empty class. My understanding is that Class 1 was created in the event any nonpriority tax claims were asserted before §502(b)(9)(A)'s extended bar date, but after the Plan was filed. The Plan notes that no nonpriority tax claims have been filed.

though, as noted above, no such claims have been filed). In the aggregate, I believe all the foregoing satisfy the requirement of §1129(a)(9).

➤ §1129(a)(10) — Based on the Ballot Report, at least one class of impaired claims has accepted the Plan, without considering any acceptance of the Plan by any insider.

➤ §1129(a)(11) — The economic information available in this case, largely Neddy's Monthly Operating Reports ("MOR's"), do not on their face demonstrate that the Plan is economically feasible and that confirmation of the Plan will not be followed by any subsequent liquidation of Neddy's assets. Neddy's MOR's alternately reflect positive and negative cash flow. Annualizing the net cash flow figures from the MOR's reflects positive cash flow, but not sufficient cash flow to make all Plan payments within the 3-year term proposed in the Plan.[6] I have spoken with Neddy's counsel regarding this issue. Neddy is aware of the issue and my understanding is that Neddy will make a presentation to the Court, including a declaration from Neddy's principal, to explain how and why the Plan is feasible notwithstanding what the MOR's reflect. In that regard, the Plan discusses business opportunities, development, and projections that would make for increased future revenue that would not be reflected in current MOR's. Accordingly, in the effort to facilitate a consensual confirmation, I defer to Neddy and the Court on this issue. If Neddy can establish feasibility to the Court, I believe the Plan meets the requirement of §1129(a)(11).

➤ §1129(a)(12) — It appears that all fees payable to the United States Trustee under 28 U.S.C. §1930 have been paid. In this case, it appears the only such fees were the filing fee for the petition. Pursuant to 28 U.S.C. §1930(a)(6), no quarterly fees are due or payable to the United States Trustee in a Subchapter V case.

---

[6] This conclusion assumes that the cash flow figures reflected in the April MOR (ECF docket number 90) are a duplicate of the figures for the March MOR (ECF docket number 77). If the cash flow figures for April were indeed the same as those in March, in the aggregate the MOR's reflect sufficient cash flow to make all Plan payments within a 3-year Plan term.

5

➢ §1129(a)(13) – This subparagraph relates to a certain subset of retiree benefits a debtor is required to provide to retirees under a defined benefit retirement plan. I believe this subparagraph does not apply in this case.

➢ §1129(a)(14) — This subparagraph relates to payment of domestic support obligations, and does not apply in this case.

➢ §1129(a)(15) — Pursuant to §1191(a) and (b), this subparagraph is not a confirmation requirement for Subchapter V cases.

➢ §1129(a)(16) — This subparagraph relates to property transfers by a nonprofit corporation or trust, and does not apply in this case.

**Additional Considerations:**

<u>United States Trustee Confirmation Objection:</u> (ECF docket number 108): My understanding is that Neddy and the United States Trustee ("UST") have resolved the issues raised in the UST confirmation objection. I defer to those parties on the terms of any agreement they have reached.

<u>Everline Confirmation Objection:</u> (ECF docket number 107): According to the Everline confirmation objection, the plan as drafted "creates ambiguity as to whether the Debtor intends to honor its ongoing noncomplete [sic] obligations." Accordingly, Everline requests that the Plan not be confirmed unless the confirmation order includes language essentially adjudicating whether the confirmation order works to enjoin specific claims that have not, but might in the future, arise under the parties' agreement.

As a threshold matter, I do not believe the language proposed by Everline addresses Neddy's "intentions" that appear to be the concern Everline voices in the opening paragraph of its confirmation objection. I also do not believe the Everline confirmation objection states a cognizable bar to confirmation of the Plan. To my knowledge there are no live, existing disputes or issues regarding the agreement described in the Everline confirmation objection that would ripen what is essentially a

6

Case 2:25-bk-01459-BKM    Doc 120    Filed 08/04/25    Entered 08/04/25 15:53:32    Desc
Main Document    Page 6 of 7

request for an advisory §524 or §1141 declaratory judgment. I defer to Neddy and the Court on whether to include in the confirmation order the language Everline requests.

<u>Ford Motor Credit Confirmation Objection:</u> (ECF docket number 109): the Ford Motor Credit ("FMC") objection raises an issue regarding its proofs of claim (ECF claims register numbers 6 and 10, the "POC's"), and whether those POC's represent one duplicate claim or two independent claims. The Ballot Report acknowledges that the FMC POC's represent two independent claims, which I believe resolves the FMC confirmation objection.[7]

<u>North Mill Equipment Finance Confirmation Objection:</u> (ECF docket number 110). The North Mill Equipment Finance ("North Mill") confirmation objection raises issues about the payment terms for its secured claim. As discussed above, I believe the parties have, or will, resolve these issues prior to the confirmation hearing on terms that will include North Mill's support of the Plan and confirmation.

**CONCLUSION**

Based on the foregoing, and subject to the Court's determination and adjudication of the open and disputed issues noted herein,[8] along with developments that I believe will result in agreed resolution of a number of the open issues, I would conditionally recommend that the Court confirm Neddy's Plan pursuant to §1191(a).

Respectfully submitted: August 4, 2025.

/s/ *Joseph E. Cotterman*  AZBAR#013800
Joseph E. Cotterman
Subchapter V Trustee

---

[7] This is in addition to Ford Motor Credit's other claims that are not the subject of its confirmation objection.

[8] I would note that Neddy and Huntington Bank have entered into a stipulation to extend Huntington's objection to object to confirmation of the Plan (ECF docket number 111). As of the filing of this recommendation, Huntington has not filed a confirmation objection, and I am unaware whether it intends to do so.